GENUINE PARTS COMPANY, APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as *Genuine Parts Co. v. Limbach* (1991), 62 Ohio St.3d 93.]

(No. 90–2353—Submitted September 18, 1991—Decided November 6, 1991.)

*Squire, Sanders & Dempsey* and *Ted B. Clevenger,* for appellant.

*Lee I. Fisher,* Attorney General, and *Barton A. Hubbard,* for appellee.

*Per Curiam.* We agree with Genuine that the true object of these transactions is the receipt of personal and professional services to which adp or computer services are merely incidental or supplemental. Consequently, we reverse the BTA's decision.

On July 1, 1983, the General Assembly defined adp and computer services as a taxable sale. During the instant audit period, the General Assembly enacted or amended the language that taxes this service three times. In Am.Sub. H.B. No. 291, 140 Ohio Laws, Part II, 2872 (eff. July 1, 1983), R.C. 5739.01(B)(3)(e) provided that a taxable sale included:

"(3) All transactions by which:

" * * *

"(e) Automatic data processing and computer services are or are to be provided for use in business. Notwithstanding any other provision of this chapter, such transactions that occur between members of an affiliated group are not sales when the true object of the transaction is the receipt by the consumer of automatic data processing or computer services rather than the receipt of personal or professional services to which automatic data processing or computer services are incidental or supplemental. For this purpose, *personal and professional services includes* feasibility studies, consulting and design services, technical instruction and aid, *accounting* or legal *services,* or any other situation where the service provider receives data or information and studies, alters, analyzes, interprets or adjusts such materials. * * * " (Emphasis added.) 140 Ohio Laws, Part II, 3215.

The Act defined "automatic data processing and computer services" in R.C. 5739.01(Y) as:

" * * * [T]he processing of others' data; providing direct access to computer equipment by remote or proximate access for the purpose of processing data or examining or acquiring data stored in or accessible to such computer equipment; designing, selling, leasing, modifying, or debugging of specialized or customized computer programs or other software; and consultation, systems analysis, and training services provided in conjunction with the design, installation, revision, conversion, sale, lease, or operation of taxable computer equipment or systems." 140 Ohio Laws, Part II, 3220.

In 1984, the General Assembly enacted Sub. H.B. No. 794, 140 Ohio Laws, Part II, 4746, 4778 (eff. July 6, 1984), to amend R.C. 5739.01(B)(3)(e) by repositioning the "personal or professional services" language. This separated the affiliated group language from the personal services language, clarifying that a provider of professional services need not be affiliated with the recipient to qualify for the exception.

Effective January 10, 1985, the General Assembly, in Sub.S.B. No. 112, 140 Ohio Laws, Part I, 225, again amended R.C. 5739.01(B)(3)(e) and (Y). The statute then defined, as relevant to the audit period, a sale to include transactions in which:

"(e) Automatic data processing and computer services are or are to be provided for use in business when the true object of the transaction is the receipt by the consumer of automatic data processing or computer services rather than the receipt of personal or professional services to which automatic data processing- or computer services are incidental or supplemental.* * *

" * * *

"(Y)(1) 'Automatic data processing and computer services' means: processing of others' data, including keypunching or similar data entry services together with verification thereof; providing access to computer equipment for the purpose of processing data or examining or acquiring data stored in or accessible to such computer equipment; and services consisting of specifying computer hardware configurations and evaluating technical processing characteristics, computer programming, and training of computer programmers and operators, provided in conjunction with and to support the sale, lease, or operation of taxable computer equipment or systems. 'Automatic data processing and computer services' shall not include personal or professional services.

"(2) As used in divisions (B)(3)(e) and (Y)(1) of this section, 'personal and professional services' means all services other than automatic data processing and computer services, including but not limited to:

"(a) Accounting and legal services such as advice on tax matters, asset management, budgetary matters, quality control, information security, and auditing and any other situation where the service provider receives data or information and studies, alters, analyzes, interprets, or adjusts such material[.]" 140 Ohio Laws, Part I, 227, 233–234.

The BTA found that AMS performs accounting services. The evidence bears this out. AMS prepares financial statements and tax returns, reconciles bank statements, prints checks to pay the jobbers' invoices and employees, and renders financial advice to the jobbers.

Moreover, a jobber fortified this conclusion. Under cross-examination, he testified that:

"I don't have an accountant, so everything that is· handled as far as bookkeeping[,] record keeping, tax preparations, those types of things, because I have no one hired as an accountant, and I guess I include everything AM[S] does as either an accounting function or some other type of management service."

The BTA, however, decided that the computer played a definite role in the transaction. Despite finding that AMS performed accounting services, the BTA concluded that it had to rule the entire transaction taxable because Genuine had not separately stated charges for both functions.

However, we conclude that the BTA erred when it relied on the definition of "price" in R.C. 5739.01(H) to reach this finding. This reliance is mystifying. The BTA evidently refers to the following language in division (H):

" * * * When the price includes both a charge for tangible personal property and a charge for providing a service and the sale of the property and the charge for the service are separately taxable, or have a separately determinable tax status, the price shall be separately stated for each such charge so the tax can be correctly computed and charged."

This provision refers to when a price includes a charge for tangible property and a charge for providing a service. In the sales of adp or computer services mixed with personal or professional services, however, the vendor provides only services, and the price includes only a charge for services. Thus, this provision has no application to this type of transaction, and the BTA's reliance on R.C. 5739.01(H) renders its decision unlawful. Accordingly, we reverse the BTA's decision.

*Decision reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.